Lisa Broadway WALKER, Plaintiff,

v.

MDM SERVICES CORPORATION, Formerly known as MDM Engineering Corporation, Mike Freligh, Carol Freligh, and Mark Harriman, Defendants.

No. CIV. A. 5:97CV–128–J.

United States District Court,
W.D. Kentucky.

Feb. 3, 1998.

Geneva F. Parris, Hopson & Parris, Cadiz, KY, for Lisa Broadway Walker.

David R. Kresser, Fisher & Phillips, Atlanta, GA, for MDM Services Corp. f/k/a MDM Engineering Corp.

David L. Kelly, Denton & Keuler, Paducah, KY, for Mike Freligh, Carol Freligh.

## MEMORANDUM OPINION

JOHNSTONE, Senior District Judge.

In this action, Plaintiff Lisa Walker sues her former employer MDM Services Corporation and its employees Mike Freligh, Carol Freligh, and Mark Harriman. She alleges sexual harassment in violation of Title VII of the Equal Employment Opportunity Act, 42 U.S.C. § 2000(e), and the Kentucky Civil Rights Act, K.R.S. 344.010. She also asserts pendent state law claims against MDM, Mike Freligh, Carol Freligh and Mark Harriman for retaliatory discharge, breach of contract, defamation, and intentional or negligent infliction of emotional distress. Further, she makes a claim against Mike Freligh for assault. Before the Court are (I) motions of Carol Freligh and Mike Freligh to dismiss the sexual harassment claims and to compel arbitration of the remaining state law claims, and (II) motion of defendants MDM and Harriman to compel arbitration and to stay judicial proceedings. For the reasons that follow, both motions will be sustained.

### Background

In November of 1994, defendant MDM hired plaintiff Walker as an administrative assistant on the Lockheed Martin contract. She signed an agreement to arbitrate certain disputes with MDM or its employees that might arise in the course of her employment. She does not remember signing the agreement, but does not contest the authenticity of her signature.

The agreement provides in part:

I agree to Arbitrate Claims because I understand that differences, disputes or controversies ("Issues") may arise between MDM Engineering Corporation (MDM) and me either during or after my employment with MDM and I want these Issues resolved through arbitration. I also understand that these Issues relate to any aspect of my employment with MDM and I wish enter into an agreement with MDM that will provide for a fair and expeditious resolution of any such Issues. By entering into this Agreement, I intend that any and all Issues that may arise between MDM and me will be resolved solely by arbitration as provided in this Agreement which will result in a binding and final resolution of all such Issues. I understand that the benefit to me of resolving my Issues with MDM through arbitration will be a speedy and impartial procedure. I understand that by agreeing to resolve all Issues with MDM under this agreement through arbitration that I am expressly waiving any right to resolve such Issues by court and judge or jury.

Plaintiff's immediate supervisor was Mike Freligh. Mike's supervisor was his wife, Carol Freligh. She was the overall supervisor for the MDM training department. Carol's supervisor was Mark Harriman, the Project Manager for MDM.

## I.

**Motion of Mike and Carol Freligh to dismiss sexual harassment claims and to compel arbitration of state law claims.** Defendants Mike and Carol Freligh move to dismiss the sexual harassment claims brought against them under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) et seq. and the Kentucky Civil Rights Act, K.R.S. 344.010, and to compel arbitration on the state law claims. Plaintiff responds that, if the Court grants the motion to compel arbitration, then the case should go to arbitration without a ruling on the motions to dismiss.

 An individual employee/supervisor, who does not otherwise qualify as an "employer," may not be held personally liable under Title VII or under the Kentucky Civil Rights Act, K.R.S. 344.010. *Wathen v. General Electric Company*, 115 F.3d 400 (6th Cir.1997). Accordingly, defendants Mike and Carol Freligh cannot be held individually lia-

ble under Title VII or the Kentucky Civil Rights Act. Their motions to dismiss the sexual harassment claims under these statutes will be granted and the state law claims against the Frelighs shall proceed to arbitration.

## II.

**Motion of MDM and Harriman to Compel Arbitration and Stay Judicial Proceedings.** Plaintiff argues against compelled arbitration on grounds that (1) the Supreme Court decision in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) did not address whether the Federal Arbitration Act applies to employment contracts, (2) the MDM Policies and Procedures Manual provides that sexual harassment claims may be pursued through the Courts, (3) plaintiff was unaware of the arbitration clause in the agreement and does not remember signing it, and (4) the agreement is unconscionable because its execution was a condition of employment, it requires plaintiff to pay one half of the arbitration costs, and because of the inequality in bargaining power between the parties.

Defendants respond that (1) although the Supreme Court in *Gilmer* did not decide the issue of whether the FAA applies to employment contracts generally, the Sixth Circuit, in *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592 (6th Cir.1995), ruled that the FAA excludes only employment contracts of workers personally engaged in the movement of goods in interstate commerce, (2) the MDM Policies and Procedures Manual expressly provides that any employment disputes will be resolved by arbitration, (3) plaintiff signed and executed a valid and enforceable agreement to arbitrate, and (4) plaintiff did not have to accept the job offer, plaintiff could recover all of the arbitration costs should she prevail, and plaintiff has equal control over selecting the arbitrator.

■ **A. FAA Applicability.** The Federal Arbitration Act provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement* ... 9 U.S.C. § 3. (Emphasis added).

The FAA further provides:

A written provision in any...contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract...*shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.* 9 U.S.C. § 2. (Emphasis added).

The FAA exclusionary clause provides that the FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

Plaintiff argues for a broad interpretation of the exclusionary clause so as to remove her arbitration agreement from FAA coverage. However, the Sixth Circuit, in *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592 (6th Cir.1995), rejected such a broad interpretation and adopted a very narrow construction of the § 1 exclusionary clause. The *Asplundh* Court concluded that "the exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Id.* at 600–601.

Here, plaintiff was hired by MDM as an administrative assistant. Her job does not fall within the "class of workers actually engaged in the movement of goods in interstate commerce" as contemplated by the Court in *Asplundh.* The FAA applies to plaintiff's arbitration agreement.

■ **B. MDM Policies and Procedures Manual.** Plaintiff argues that the following

passage from the MDM manual gives her immediate access to a judicial determination of her dispute:

> In addition to notifying MDM about harassment or retaliation complaints, affected employees may also direct their complaints to the California Department of Fair Employment and Housing (DFEH), which has the authority to conduct investigations of the facts. The deadline for filing complaints with the DFEH is one year from the date of the alleged unlawful conduct. If the DFEH believes that a complaint is valid and settlement efforts fail, they may seek an administrative hearing before the California Fair Employment & Housing Commission *or file a lawsuit in Court*. Both the FEHC and *the Courts have the authority to award monetary and non-monetary relief in meritorious cases.* (Plaintiff's Emphasis).

Defendants responds by citing a section of the MDM Manual entitled "Dispute Resolution Through Arbitration," which states:

> Any differences, disputes or controversies ("Issues") which may arise between MDM Engineering Corporation (MDM) and you either during or after your employment with MDM will be resolved through arbitration. These issues relate to any aspect of your employment with MDM and arbitration will provide for a fair and expeditious resolution of any such issues. Any and all Issues that may arise between MDM and you will be resolved solely by arbitration, which will result in a binding and final resolution of all such issues.

The manual clearly provides for arbitration of employment related disputes. In any event, the arbitration agreement trumps the MDM Policies and Procedures Manual.

■ **C. Validity of Agreement to Arbitrate.** Plaintiff argues that the agreement should not be enforced because she does not remember signing it and did not know that it contained an agreement to arbitrate. Defendants respond that her memory is irrelevant because she does not allege fraud and that the contract should be enforced under ordinary principles of contract law.

■ The failure to read a contract and the mere lack of knowledge of it contents do not provide a basis for invalidating an executed contract. *Grigsby v. Mountain Valley Insurance Agency,* 795 S.W.2d 372 (Ky.1990), citing *Howard v. Reliance Ins. Co. of Philadelphia,* 347 S.W.2d 508 (Ky.1961). Under traditional principles of contract law, the arbitration agreement is valid.

■ **D. Arbitration Agreements / Unconscionability.** Plaintiff argues that the agreement to arbitrate is unfair or unconscionable because it was a condition of employment, it could require her to pay one half of the arbitration costs, and was a result of the unequal bargaining power of the parties. Defendants respond that plaintiff did not have to sign the agreement, she could recover the arbitration costs, should she prevail, and she has equal control over the choice of arbitrators.

We follow the teachings of *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). They hold that agreements to arbitrate are not to be considered unfair, in and of themselves and that mere inequality in bargaining power is not a sufficient reason to hold arbitration agreements unenforceable in the employment context. "While courts should remain attuned to well supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract, the existence of a clause mandating arbitration is not sufficient to invalidate a contract because by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." *Gilmer* citing *Mitsubishi Motors* 473 U.S. at 629.

■ There must be evidence of fraud or coercion beyond mere unequal bargaining power to find the arbitration agreement unconscionable. No such allegations are made in this case.

Plaintiff further argues against enforcement of the agreement on grounds that she could be required to pay the arbitration costs. Defendants respond that no costs have yet been assessed, plaintiff may recover the costs of arbitration and that plaintiff has equal control over the choice of arbitrators. Plaintiff has not yet been required to pay any arbitration costs and she may never be required to do so. Indeed, should plaintiff prevail, she may recover all of her costs.

In summary, the Court finds that (1) the FAA applies to the arbitration agreement (2) the agreement to arbitrate controls over the MDM Policies and Procedures Manual, (3) the agreement is valid and enforceable, and (4) the contract is not unconscionable. An appropriate order accompanies this memorandum.